**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-40156
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOAN CATHERINE MALBROUGH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:94 CR 61 3)
_____

September 19, 1995

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Joan Malbrough appeals her conviction of, and sentence for, embezzling postal funds, converting property of the United States Postal Service, and failing to account for said funds and property when required, in violation of 18 U.S.C. §§ 2, 371, 641, and 1711. Finding no reversible error, we affirm.

_____

[*] Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that rule, the court has determined that this opinion should not be published.

In December 1993, Postal Service Inspector Randall Till received information regarding a shortage of $1,649.39 in the assigned accountability of Sharon Taylor, a Postal Service window clerk in the Downtown Post Office in Beaumont, Texas. In February 1994, Till contacted Taylor's Supervisor, Carol Smith, who informed Till that the shortage was still outstanding. Till and Smith agreed to conduct an unscheduled audit of Taylor's accountability. Till established video surveillance at the Post Office and positioned himself to be able to view personally the activities of the window clerks.

Sharon Taylor, Malbrough's codefendant who pleaded guilty prior to trial, testified regarding her involvement in the offense. Taylor testified that on March 2, 1994, Smith, her supervisor, told her at about 9:30 or 10:00 a.m. that she was going to be audited after lunch. It was an unscheduled audit, and she knew that the audit would reveal a shortage in her accountability because she had taken money, approximately $2,500. Taylor gave a coworker, Duplantier, a note informing her that she was going to be counted after lunch and telling her how much it was. She then walked down to Malbrough's window and told her that she was going to be counted after lunch.

Taylor told Malbrough that she would need about four big coils of stamps. She told her she needed them because she was being counted; she did not tell Malbrough that she needed them for a customer. Malbrough looked in her cash drawer but did not have

2

four big coils. Later, after lunch, Malbrough came to Taylor's window and gave her twenty smaller coils, laying them on her window without speaking. Till observed Malbrough remove several small stamp coils from her safe, place them in a book, walk to Taylor's work station, and place them on the end of Taylor's counter. When Till confronted Taylor after her audit, Taylor admitted that Malbrough had given her the coils of stamps.

The total value of the stamp coils that Malbrough gave to Taylor was $580. When Malbrough was audited, however, her accountability was over $800 short.

Malbrough testified that she had given the stamps to Taylor but that she was not aware that Taylor was about to be audited. She testified that if she had known, she would not have given her the stamps. Malbrough could not explain the $800 shortage in her accountability.

## II.

### A.

Malbrough argues that the district court erred in failing to grant a mistrial because of the improper introduction of her co-defendants' guilty pleas. She argues that the prosecutor improperly referred to the guilty pleas of Taylor and Duplantier during voir dire and to Taylor's plea during direct examination of Taylor. She contends that the district court's instructions to the jury regarding the use of this information was inadequate because it did not limit the jury's consideration of the pleas to the credibility

3

of the witnesses.

The government mentioned in voir dire the fact that "two other ladies" involved in this conspiracy had pleaded guilty. Malbrough's attorney objected, and the district court sustained the objection and instructed the jury that that information was not relevant to whether the government could prove the elements of the counts of the indictment against Malbrough. Malbrough's attorney moved for a mistrial, which the district court denied.

After an off-the-record, side-bar discussion requested by the government, the government proceeded to question the potential jurors on voir dire about whether any of them would have a problem with testimony by a coconspirator. Malbrough's attorney again moved for a mistrial, which the district court carried with the case.

In the second instance, the government questioned Taylor on direct examination about the fact of her guilty plea. Malbrough's attorney objected again and reurged the motion for a mistrial. The district court ruled that the motion would be taken with the case and instructed the jury that that fact was irrelevant to the guilt of Malbrough. The district court instructed that Taylor could testify as to what she did and what she knew about what others had done.

The government again requested a side-bar, after which the district court ruled that it would allow limited questioning on the subject, "admissible only as it might affect the credibility of this witness." Malbrough's attorney renewed his objection, which

4

was overruled subject to renewal. The government proceeded to question Taylor about the fact that she had entered a plea agreement with the government and that, as part of that agreement, she had agreed to provide truthful testimony at this trial. The government then proceeded to question Taylor about her personal knowledge of the facts of the offense.

We will reverse a district court's denial of a motion for mistrial only for an abuse of discretion. United States v. Limones, 8 F.3d 1004, 1007 (5th Cir. 1993), cert. denied, 114 S. Ct. 1543 (1994). A defendant is entitled to have the issue of his guilt determined upon the evidence against him and not on whether a codefendant has pleaded guilty to the same change. United States v. Black, 685 F.2d 132, 135 (5th Cir.), cert. denied, 459 U.S. 1021 (1982). A witness-accomplices's guilty plea may be admitted into evidence, however, if it serves a legitimate purpose and the district court gives a proper limiting instruction. United States v. Mitchell, 31 F.3d 271, 276-77 (5th Cir.), cert. denied, 115 S. Ct. 455 (1994). Other factors to be considered are whether the plea was improperly emphasized or used as substantive evidence of guilt and whether introduction of the plea was invited by defense counsel. Black, 685 F.2d at 135.

In voir dire, defense counsel stated that in this case, "someone is going to lie." By this remark, defense counsel could be considered to have invited the prosecution to introduce evidence of Taylor's guilty plea in order to "`blunt the sword of anticipated impeachment.'" Mitchell, 31 F.3d at 277 (citation

5

omitted); see also United States v. Robins, 978 F.2d 881, 888 (5th Cir. 1992) (holding that defense counsel's opening remarks invited the jury to regard with suspicion adverse testimony by witness who plea bargained); United States v. Casto, 889 F.2d 562, 567 (5th Cir. 1989), cert. denied, 493 U.S. 1092 (1990) (opining that because defense counsel in opening argument invited jury to regard with suspicion adverse testimony by codefendant who pleaded guilty, it was prosecution's privilege to defuse potential attacks on government witnesses's credibility during direct examination by adducing fact of guilty plea).

During voir dire, after the government's first reference to a codefendant's guilty plea, the court instructed the jury contemporaneously that whether another person was previously a defendant in this case was irrelevant to Malbrough's guilt and was admissible only as it might affect the witness's credibility. Later during the government's case, the court instructed the jurors that the fact that Taylor pleaded guilty in this case was not evidence of the guilt of any other person and that it went only to her general credibility. In its final instructions to the jury, the court again instructed that "the fact that an accomplice has entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of any other person."

Contrary to Malbrough's argument, the district court's limiting instructions were more than adequate to counter any prejudice from the introduction of evidence of Taylor's guilty plea. See Mitchell, 31 F.3d at 277 (reasoning that a proper

6

limiting instruction includes instruction that guilty plea could be considered only in determining witness's credibility and was not evidence of defendant's guilt).  The district court did not abuse its discretion in denying Malbrough's motion for mistrial.

B.

Malbrough argues that the district court erred in awarding a two-point increase in her offense level for more than minimal planning.  She contends that there was no direct evidence that she was involved in anything more than minimal planning and that there was no evidence that showed that she ever committed a similar offense in the past.  She further contends that there was no evidence of an agreement between the defendants or of premeditated planning or that she took significant steps to conceal the offense.

The probation officer recommended that Malbrough's offense level be increased by two points for more than minimal planning because her actions as part of the conspiracy occurred over a period of at least one year, involving the cooperation of three postal employees; and that, by transferring postal stock, the coconspirators were able to prevent embezzled money from being detected during audits.  Malbrough objected, arguing that the evidence showed only a one-time transaction.  The probation officer responded that according to statements to Till by Taylor and Duplantier, the practice of exchanging stock to cover shortages caused by embezzlement had occurred previously on more than one occasion.  Taylor stated that she had loaned postage stock to

7

Malbrough prior to an audit at least twice in the past year and had done the same for Duplantier within the last six months. It was the probation officer's opinion that the circumstances of this case suggested that Malbrough's actions were well thought out and that each instance of stock exchange was not purely opportune. The district court, after reading aloud the probation officer's response to Malbrough's objection, found that the probation officer's opinion was correct, that there was more than minimal planning, and denied Malbrough's objection.

The sentencing guidelines provide for a two-level increase in the offense level if the offense involved more than minimal planning. U.S.S.G. § 2B1.1(b)(5)(A). The guidelines define more than minimal planning as "more planning than is typical for commission of the offense in a simple form." § 1B1.1, comment. (n.1(f)). More than minimal planning exists if significant affirmative steps were taken to conceal the offense. It is also deemed present in a case involving repeated acts, unless it is clear that each instance was purely opportune. As an example, the guidelines explain that in the case of embezzlement, "a single taking accomplished by a false book entry would constitute only minimal planning," but that "creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries." Whether a defendant has engaged in more than minimal planning is a fact question reviewed under the clearly erroneous

8

standard.  <u>United States v. McCord</u>, 33 F.3d 1434, 1454 (5th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 2558 (1995).

Malbrough's argument focuses only upon the evidence produced at trial.  She does not address the statements of Taylor and Duplantier, recounted in the presentence report, regarding the fact that the embezzlement and stock exchanges to cover up shortages in audits had been going on for at least a year.  She does not argue that such statements could not be considered by the district court. Those statements adequately support the court's finding that more than minimal planning existed; the court did not clearly err in its finding.

## C.

Malbrough argues that there were other errors at trial which, although each may not by themselves be considered harmful, when taken together cumulated into reversible error because they deprived her of her right to due process of law by seriously affecting the fairness and integrity of her trial.  Those errors were (a) repeated mischaracterization of the evidence by a government witness; (b) the prosecutor's comment on her failure to make a pretrial statement, in violation of her Fifth Amendment right to remain silent; and (c) the prosecutor's introduction of matters not in evidence before the jury in closing arguments.

Trial errors that are harmless when considered alone may mandate reversal when considered cumulatively, if the cumulative effect is to deny the defendant's right to a fair trial.  <u>United</u>

9

States v. Labarbera, 581 F.2d 107, 110 (5th Cir. 1978). "Cumulative reversible error, although not unknown to [this court's] jurisprudence, is a rarity." United States v. Iredia, 866 F.2d 114, 118 (5th Cir.), cert. denied, 492 U.S. 921 (1989).

### 1.

Malbrough states that a government witness, whom she does not specifically identify, mischaracterized the evidence and persisted to mischaracterize her actions and intentions despite specific instructions from the court. She does not state nor does she explain how she was prejudiced by this testimony. Malbrough cites no cases in support of her argument. We could refuse to address this issue for failure to brief it adequately. See United States v. Valdiosera-Godinez, 932 F.2d 1093, 1099 (5th Cir. 1991) (internal quotation marks and citation omitted) (stating that any issues not raised or argued in the appellant's brief are considered waived and will not be entertained on appeal), cert. denied, 113 S. Ct. 2369 (1993).

Nonetheless, addressing the merits, the testimony of which Malbrough complains is Till's description of her actions in placing the coils of stamps on Taylor's work station. Till testified that Malbrough "hid" the coils by placing them under a book. Defense counsel objected, and the district court instructed the witness not to characterize her intent, but just to say what he saw. The court instructed the jury to disregard the witness's characterization.

Till then testified that Malbrough had placed the coils under

the book so that the book completely covered the coils.  He then went on to describe that Malbrough had "surreptitiously" placed the coils on the end of Taylor's counter.  The court again warned Till about characterizing what he saw.

Till then explained, without characterization, exactly what he saw Malbrough do as she placed the coils on the counter.  Defense counsel renewed the objection to Till's characterization of what was on the videotape, and the court stated that the jury could determine whether the portrayal was accurate, based upon the videotape, and instructed the jury to that effect.

Any unfair or inaccurate characterization of Malbrough's actions by Till was cured by the instructions and the fact that the jury could see Malbrough's actions for itself on the videotape. Malbrough has not shown any error, much less reversible error affecting her right to a fair trial.


2.

Malbrough contends that error was committed when the prosecution commented on her failure to make a pretrial statement, in violation of her Fifth Amendment right to remain silent.  On direct examination of Till, the prosecutor asked whether Malbrough had initially agreed to provide a written statement, as Taylor had done.  Till replied that she had agreed.

The prosecutor then asked whether Malbrough eventually had provided him with a written statement, to which Till responded that she had not.  Defense counsel objected that the question and answer

violated Malbrough's right to remain silent. He asked that the question and answer be stricken and that the jury be given a limiting instruction.

The district court questioned whether Malbrough was in custody, and the witness stated that she was not, that it was merely an investigatory interview. The district court overruled the objection.

Defense counsel asked to take the witness on voir dire. The district court denied permission at that time. The prosecutor again asked Till whether Malbrough had provided a written statement, and Till replied that she had not, upon the advice of her union representative. Defense counsel again objected, and the court recessed and excused the jury.

At the recess, it was established that Till had advised Malbrough of her Miranda rights and that she had exercised her right to remain silent. The district court sustained the objection, and defense counsel moved for a mistrial, which the district court denied. The district court instructed the jury to "disregard Mr. Till's testimony that Ms. Malbrough refused to make a written statement after being warned by him that she could exercise her rights under the Fifth Amendment not to make a statement."

The prosecutor's actions, in drawing attention to the fact that Malbrough had chosen to exercise her right to remain silent, were improper. See United States v. Laury, 985 F.2d 1293, 1302-04 (5th Cir. 1993) (holding prosecutor's comment on defendant's post-

12

arrest silence improper and in violation of <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976)).  Any error was rendered harmless, however, by the curative instruction.  <u>See</u> <u>United States v. Carter</u>, 953 F.2d 1449, 1466 (5th Cir.), <u>cert. denied</u>, 504 U.S. 990 (1992) (holding curative instruction effective to prevent the prosecutor's misconduct from rendering trial fundamentally unfair).

3.

Malbrough argues that the prosecutor committed error when he introduced matters not in evidence before the jury in closing argument.  The prosecutor stated in closing argument that "this was a continuing conspiracy, I mean continuing.  Those ladies had been working there twenty-five, twenty-seven years.  This is not the first time that these ladies have done this."  Defense counsel objected to the prosecutor's introducing matters not in evidence, arguing that there was no evidence that this was not the first time they had done this.

The district court sustained the objection to the extent that government's counsel was arguing facts not in evidence.  Defense counsel moved for a mistrial, which the district court denied.  The prosecution went on to argue its theory of a continuing conspiracy based upon the evidence in the record which showed that this was not an isolated occasion, because when the surprise audits were held, all three ladies were caught short.

Although it may have been error for the prosecution to suggest that the conspiracy had been going on for the entire twenty-five

13

years that they had worked there, there was overwhelming evidence that Malbrough was involved in a conspiracy to embezzle postal funds and cover up the shortages with Taylor and Duplantier. Malbrough has not shown that any of the above alleged errors deprived her of a fair trial, individually or cumulatively. See United States v. Tremelling, 43 F.3d 148, 153 (5th Cir.), cert. denied, 115 S. Ct. 1990 (1995) (stating that because individual claims of error had no merit, claim of cumulative error also failed).

AFFIRMED.